Good morning and may it please the court. Devon Hine representing appellant Daniel Gonzalez. Mr. Gonzalez was 20 years old when he was when the passenger in his car fired one shot at a group of rival gang members. Counsel, we have read the briefs we know what the facts are and I would appreciate you addressing the What questions were asked in voir dire that should have prompted juror number three to reveal the gang incident that had involved her brother and to reveal her anxiety? I'm sorry I don't have an exact say to the question in voir dire but my but the question that the court acknowledged that she didn't answer was whether anyone that she knew had been a violent of a victim of a violent crime. And I also imagine whether she knew anyone from the that was listed on the witness list. Now it is true that juror number three said she didn't recognize the name of the detective who investigated her brother's the case involving her brother and her brother's friend but regarding whether or not she knew any victims of violent crime this would have revealed the stabbing incident the bombing and the bombing incident which was actually in her own driveway. So those questions both should have elicited that information from her. But when the trial judge found out about it he disqualified her replaced her and told him to start deliberations over with. Right. What else what else should he have done? Well given that given that what she said was possibly prejudicial it triggered a requirement to investigate further and to hold a hearing and to determine what if any effect her statements to the jury had before before simply admonishing them not to consider it because the court had already the court says it didn't find misconduct but it at the same time it told them to disregard what she said. If what she said had the if what she said was improper and therefore needed to be disregarded then its effect on the jury also needed to be investigated and that's under Remmer and under other Supreme Court law that requires that the court take all proper steps for due process sake to determine the effect of extraneous information. Didn't the Remmer and the other have to do with jurors bringing something other than their own experiences into the jury room? We certainly agree that she should have disclosed this but but don't Remmer I mean don't those cases have to do with they when they bring something other than their own experience as a courtroom by they've talked to somebody or they've done some research? Well I would say your honors that well that well it is true that Remmer addresses that very specifically this court actually held in Godoy and made clear that there's no indication that Remmer is limited only to certain particular kinds of misconduct rather when their misconduct appears prejudicial there needs to be further inquiry. I'll say this court's held on several occasions that whether or not information is outside information depends on its on its nature not its source so here if a juror here where the juror was telling detailed and inflammatory stories of crimes that were not necessarily similar to those testified to at trial by the gang expert that was extraneous information which was which was which was misconduct to introduce and which should have I would also say here that what juror number three did by by by imparting all this information to the rest of the jurors was acting as basically putting herself out there as an additional expert witness against these gangs and saying that she knew how they conducted themselves that she had these examples to support that she knew that they conducted themselves this way and that they would kill people without remorse. The evidence of intent... One question I had about that it she expressed fear for herself as a result as I understand it as a result of these events and if the other jurors were affected by that isn't it more likely that they would have not convicted because they didn't want to incur the wrath of the gang. I disagree your honor I think what what this would this information would have done is to inflame a jury as it typically does to get these bad guys to put these guys away because they're these kind of people and that was at the center of this case. Here this and I want to also point out again right that my my client petitioner appellant was the driver of in this case he was not found to be armed he was not found he denied knowing that his co-defendant was armed and the police stated that into the record and he had never been in trouble before even the gang expert said he'd never he wasn't aware of him prior to this case so the evidence of his specific intent for anyone to be killed was very sparse and to let this juror then give this additional expert testimony about how gangs conduct themselves and how easily they would kill someone really could have what could have prejudiced my client with regard to the intent issue which was again central. So juror number three have not relayed that information in other words if a juror knows something that's relevant their common sense their common life experiences are they not to contribute that to part of deliberation? I don't think that's the issue here you they're certainly supposed to and that's why I think. The issue here is she didn't disclose it. Oh no no no I think that well I think the issue is two parts because she didn't disclose it during voir dire she committed misconduct by failing to failing to say something that could have gotten her removed for cause at the same time when a person conceals information on voir dire it then makes it impossible for those biases to be filtered out before they make it into the before they make it into the deliberations. I think a good example here is the case where is the case where even in voir dire when a witness kept saying that she was an expert on child allegations of abuse and that in her opinion every time a child came forward with allegations of abuse they were telling the truth or that she in her experience rather that that was true possibly prejudicial which again would have triggered a further inquiry here it wasn't sufficient at that point to simply to simply admonish the jury not to consider whatever they had heard. I want to get back briefly you said the hearing should have been held prior to verdict? Yes and I think that sorry are you saying that if we were to remand the case back to the district to the judge to conduct a hearing of the jurors as to what if any impact this had on the verdict that wouldn't be sufficient relief for you at this time? I would say that it would the issue here is also that there was a this would have triggered a presumption of prejudice that never was applied so I suppose to say that it would be impossible to say that this failure to hold a hearing was rebut the presumption of prejudice which they can't do with the evidence on the record. So maybe I wasn't clear what I want to know is are you wanting us to overturn the conviction give a new trial or you're wanting us to order the district judge to do the hearing that you requested that you didn't get? I think here Mr. Gonzalez is entitled to a new trial because because as I said this prejudice if we stopped at that presumption of prejudice because the court failed to reach that which it should have then there was never any effort to rebut that presumption. So if I could if I could address also briefly the question then of the ineffective assistance. Here the issue with the ineffective assistance issue is that it it seems clear that it would have been easy and simple for for counsel to get a declaration from get a declaration from the juror or the foreperson. The reason that it matters here is that the court cites several times for the proposition that it was free to disregard the statements in the the statements in the report due to them being unsworn hearsay and when you look at the court's language the court's language admission the court's language sorry denying the motion for a new trial he repeatedly says that he's hearkening back to his previous holding so it's not clear from the record here whether or not the court was saying independent of that report that his holdings were still correct or because he did not consider that report his holdings were still correct and I think that that is a reason that at the very least a hearing is required on the ineffective assistance claim as to prejudice. And what would that what would we do at the hearing? At the hearing we would we need to determine we need to know whether or not the court denied the whether or not the court was denying the I'm sorry denied the motion for a new trial because we didn't have a trial judge in we were to hold a hearing but who are we going to call? That's a good question your honor I I suppose we would we wouldn't call the trial judge so we would have to determine but it then I guess if you can't have a hearing on this claim it would also be impossible to say that that the conduct wasn't harmless so then that you would require relief if a hearing is not appropriate. Did you want to save some rebundal time? I will I could briefly address one thing regarding I know you had asked me to focus on those two points but if I could briefly address the insufficient evidence claim I understand that there is the concern of epidemial deference but at the same time it's known not to be insurmountable as this court held in Quonich and here where the where the Court of Appeal itself basically said that it was speculating as to where the people were positioned but that they could nonetheless find support that anyone was in this direct line of fire I think is patently unreasonable and therefore would also warrant overturning the conviction and if if the court has no further questions at this time I will save the rest of my time for rebuttal. Thank you. Good morning may it please the court Deputy Attorney General Michael Keller for the Warden. I think the first thing that's important in looking at the juror misconduct claim is to think about what type of claim this is. There there's the tampering type claim which is what you had in Remmer an outside influence coming in or maybe an internet search that's one type of juror misconduct. This misconduct claim has to do with the juror not revealing in response to crime and specifically with this gang that's involved in this case and it would seem to me that that would be that that would be misconduct not to reveal that information and it just to me speaking only for myself once that information came forward once the jury foreperson said this person is scared and she's been she knows about this gang not to ask the other jurors you know one by one what was said and you know can you really leave this behind it just struck me as perhaps an insufficient response. So what I would say is that the intentional concealment or concealment during jury selection leads to an if juror 3 sat on the jury then then then the issue would be one of bias but since juror 3 was removed we're left with how did her comments affect the jurors who remained which is pretty important if depending on what she said and how it affected them and we don't know because there wasn't a hearing. Well what we do know is what she said and we do know the context of what she said and why she said it and that's important here so that becomes a question of a what we have is we have a juror who shared a personal experience from 10 years ago and the and in this court in Grota Mayor has said jurors talk about personal experiences all the time there's nothing wrong with that. Well it depends on what the personal experience is you know if if you know if the personal experience were I didn't tell you you know in voir dire that I terrific people and I'll give you an example because I you know one of them gave me a birthday party and you know those are all personal experiences but they're not proper and so the to me the question is how do we know what effect this had on the remaining jurors as to whether they felt they needed to put this bad guy away. So I absolutely agree it's the question is when we look at the whether it's extrinsic evidence and the problem with extrinsic evidence is it's allowing uncross-examined unsworn testimony to come before the jury through one juror telling another jury something so the question is was this for instance if she had said I know the defendant and he has he's violent okay and here that she says my brother testified at a trial involving these gangs and then they tried to you know then they bombed his car in my driveway right so it didn't involve petitioner it didn't involve petitioners gang and in context it wasn't offered to so like if you look at the Estrada case the Estrada case was where somebody talked about a personal experience a person was released from custody got out and committed a homicide so the personal experience of someone sharing it and saying that's why I'm afraid that's one thing but in Estrada what the person did the juror did was say we should convict this person of a long of the most serious crime so they get a long sentence but regardless of what specific words were said shouldn't we know what the other remaining jurors understood from what she said or how they reacted to what she said whether it affected the their view of the case well it's consistent both with what jurors three said and the four persons note the four three was explaining there was a there was a conversation that occurred in the jury deliberations and she wasn't feeling well and they inquired and that's when she revealed and came clean right with what happened so in context both juror three was talking about her own personal fear and the jury for person was interpreting it as an explanation of a fear not as we should one juror that's one juror that's my problem what are we what are the other jurors think but if it's offered about fear in other words I'm really concerned and here's why how I don't even understand how the other jurors could use it as deciding the case in other words it's not like this other game committed a crime against me so you should convict these petitioners nothing like that was said or offered so there's nothing there's basically no indication of any misconduct at all and when we look at these types of situations in in Tracy that's where one of the things that opposing counsel had said that that the remmer I standard in terms of what it requires to hold the hearing applies in all the different contexts and that's just not simply true in Tracy this court said that remmer's command about hearings is unique to the tampering context where the potential effect on the tampering was not at issue in Tracy's case this isn't a tampering case so remmer doesn't apply so we're left with is there any material difference between how juror three is describing the situation that occurred and the four person no is there anything that is especially severe in terms of what's being revealed like if she had said the defendant has a prior record the defendant has a reputation for violence no it's nothing like that that has a severe severe indication that there's going to be prejudice and let me ask you if during the jury selection process juror number three had stood up and said to the entire jury selection panel exactly what she said we know she said in the jury room she wouldn't been placed on the jury you agree with that absolutely and the judge then in his instructions would said to the jury who did get in panel do you decide your case solely on the evidence you hear in trial right yes so the judge ultimately did tell the jury not to disregard everything juror number three said is that is that correct that is correct how do we know if the jury did that if we don't ask him well in the example that you gave if it happens in jury selection I fully expect it would have gone just as you said your honor I don't think the judge would have said this jury can't be an instruction won't work here I'm going to have to send up a new panel we're going to have to start over because this is just so prejudicial I think he would have gone forward with an admonition and this is the same type of situation and in Estrada this court identified five different things that that that give us an indication as to whether or not extrinsic evidence is the kind of thing that will taint the other jurors and the first point is how was the material received so in this case again the material was offered and received not is to we should decide the case of certain we don't know that we don't know how it was received that's the very premise of the claim on appeal well we know what it was offered for both by the foreperson and they're in there in alignment there's no two of them and there are a whole lot of other people on the jury but we know we know what was said and we know the context in which it was given otherwise anything else would just be fishing to see if somebody else may have some other view of it and we should use it in some bizarre way and then I go to the second point the length of you think it's bizarre to say when when you learn about how terrible gang violence is and how upsetting it is to somebody that they won't take that into account well what I think is that jurors already understand gangs are incredibly dangerous that's a matter of common knowledge I think the fact that a gang committed a crime ten years ago isn't all that prejudicial particularly given the fact that this is a gang shooting and the fact that you had the expert testify that petitioners gang the Brown family not the gang involved in the Brown family's primary activities the thing they do all the time is shootings so I don't think it would be something that would be seen as wow this is new information about gangs that gangs actually commit crimes I think that's something that that jurors know additionally the second point that this court has looked to is the length of time something's available to the jury the extrinsic evidence and in this case it wasn't available to them for a very short time because what happened was juror 3 came clean about her fear the foreperson sent the note juror 3 was removed new deliberations with a new jury and the the third prompt prong is the extent to which it was discussed the record contains absolutely no indication that the jury ever discussed this it contains no information on that because there was no hearing it's just I mean you're sort of bootstrapping it seems to me to say well the record doesn't tell us these bad things because there's no record that I mean that just seems like circular to me but but that would be true of every case in other words we don't know if there was misconduct if the jury discussed something they shouldn't have should we bring in every jury and discuss I mean in this case there's no indication that the and they filed the motion for a new trial on this and was it was there any indication we know that that's why we're here and the foreperson didn't indicate that it was ever discussed I don't I don't think we should there should be a supposition that they did discuss it and at what point was it discussed not just before they reached a verdict it was discussed and then that juror was excused and then the new jury and they deliberated for three and a half hours that more than three and a half hours after that new the final prong is other matters and again that encompasses sort of the context of how this was offered this wasn't juror three saying we should get these guys because of what happened to my brother nothing like that was said nothing like that was in the and the foreperson didn't interpret it that way I would also point out that opposing counsel said at the Godoy case again Godoy is a is a tampering type situation it's totally different from somebody sharing a personal experience there simply isn't a Supreme Court case that would say that it's unreasonable to hold a hearing in this type of situation in terms of what would happen at a hearing your honor asked about that I guess the things that would and I would point out that in their reply brief she was asking today for no hearing that there should be relief but her briefing is pretty powerful to put that genie back in the bottle here if we thought that a hearing should have been held we really don't have any discretion other than to order habeas relief and have him retried right is there anything short of that state could propose well in Remmer they actually held a hearing and it found in the district court later made factual findings and found that it was harmless so or didn't happen but there was a hearing held in Remmer and then relief was ultimately denied yeah those were those were those were about facts that you're now you're now asking people to reconstruct dialogue how long ago was this trial more than 10 could have been about that okay you would then have to find you didn't then have to find the jurors if you could find them bring them in and ask them what happened in the jury room in something in a matter that's you know 10 to 15 years old yeah that would be definitely a but that would be a little bit of an uphill slog wouldn't well it just would be yeah it would be difficult but you certainly one thing that you can't do is talk about in this case the foreperson said that in their motion for a new trial said that it didn't affect and wasn't part of their right that that's but as judge points out that was that was that was the foreperson yeah it didn't we didn't get into the minds of anybody else nobody else was interviewed right but there's just no indication that that's right because nobody else was talked to we don't we have another 10 jurors who are in that room who know something about it and we're not we're not asked what they what happened and the question ultimately before this court isn't whether it would have been preferable or advisable to hold a hearing the question is whether or not it violated u.s. Supreme Court precedent to write so that's whether and and and I think under the a DPA that it if yeah maybe it would have been preferable but but it was reasonable for the court to say I can I can cure this with an instruction and the district court judgment properly applied the a DPA I would ask this court to affirm the judgment thank you thank you counsel and you have some rebuttal time remaining thank you so the first point I want to address is that counsel has pointed out opposing counsel pointed out that there are that there did all these other instances for jury tampering cases including good boy so I'd like to direct the court to footnote six of good doorway the court specifically states that any outside contact raising a credible risk of influence of influencing the verdict triggers the presumption of prejudice good boy is our yes okay that doesn't help you very much because this is it right but this is I understand that but they so what what Supreme Court case should the California courts have looked to that would have alerted them that the trial judge had to conduct a hearing it would have been remmer because the case was remmer is remmer is quite different but it is the question remember that's a tampering that's a tampering case but the question remained whether or not the contact was possibly prejudicial which would have been triggered a presumption of prejudice that the state had to rebut here we know that the contact was possibly prejudicial that's why the court told them not to consider it and I think also to look to if we also look at what was discussed in the doorway it's the question of whether possibly prejudicial can even be squared with the standard that the state trial and appellate court applied which is this requirement of a strong possibility of prejudicial misconduct so when the court says there's no misconduct it's hard not to it's hard looking at it in context not to say that the court was actually applying that strong possibility standard to the entire to the phrase prejudicial misconduct as a whole not just misconduct and in finding in holding them to the burden or holding up petitioners the burden of strong possibility directly conflicted with clearly established federal law in that regard as well I also wanted to to just note that because that prejudicial because of that presumption the issue of all the things that aren't in the record are the where the state's burden to repair at that point so to say that to say that now you know that it would be an uphill battle to prove that it was harmless is absolutely right it would be uphill battle and that in one in this case that isn't even necessary and I think would just it would be more advisable to grant the relief on the issue I just want and also I know the court was looking at the case was about ten years ago that's correct and the last thing I did want to point out here too is that it's also unreasonable under under almost any standard to have taken the the approach that the court did because the court the trial court relied solely on the statements of a person who had just lied to the court about their experiences during water who had spent a whole day and a half in the jury room before someone finally pointed out or before someone was finally able to point out that she had been concealing all this information and then he relied solely on her statements about what she said in the jury room which weren't even really that clear to decide that there was no reason for a hearing I think it's they think that's unreasonable under any standard that to start and end the inquiry with her when she herself was already an unreliable narrator of what was going on and trying to probably protect herself so I would like to say for that reason and for the reasons I previously discussed the proper thing here I think is to grant mr. Gonzales habeas relief because the court failed to hold a hearing when information this prejudicial was imparted to the entire jury thank you counsel we appreciate very much the arguments from both of you and the case just started was submitted
judges: Graber, Bybee, Harpool